The next case today is Cecilia Raquel Gomez-Abrego v. Merrick B. Garland, Appeal No. 20-2175. Attorney Stiglianos, please introduce yourself for the record and proceed with your argument. May it please the court, Attorney Tom Stiglianos for Cecilia Gomez-Abrego and a minor child. This is a case that arises from El Salvador. Ms. Gomez-Abrego came north with her daughter, her 13-year-old daughter, now 13, seeking shelter in the United States. She was the object of threats and extortion attempts by local gangs with cooperation or cahoots, as she speaks of it, in the transcript of the local police. We applied for asylum, withholding, and convention against torture. We based our findings on a cognizable particular social group of business owners suffering from gang violence with police participation or acquiescence. I thought the group that you argued was people who would be the victims of gang violence and threats which the police either actively collaborate with or ignore and didn't say anything about women business owners. That was a question. I wonder if your honor might repeat the question. I missed essentially all of it. Okay, I said I thought that the social group that you asserted before the IJ was victims of gang violence and threats which the police either actively collaborate with or ignore because of their affiliation with gang members and the social grouping didn't say anything about targeted women business folks. I'm sorry, I misspoke, your honor. I'm certain your reading is better than mine. In any case, we spend a great deal on the argument for convention against torture. We believe that Ms. Gomez-Brigo suffered cognizable events that amounted to harassment. But back to Judge Thompson's question, given the social group that you did argue for, the IJ rejected that social group, if I recall correctly. I believe you do recall correctly, your honor. And so and I don't see any argument that that was an error of law to reject that. No, and I'd call your attention to our brief. Our lead argument is convention against torture, which does not require a nexus with a particular social group. So are you not pressing the asylum and the withholding claims? We are not. We would argue for the convention against torture claim. Attempts to gain any activity based on threats are cognizable as torture. The acquiescence of the police, whether it be a policy or a single officer, are all that's needed to support it. The country report that is part of the record sets out impunity by the police and corruption. We think that is... On the Kat claim, there was a finding that she had not suffered harm in the past that amounted to torture. Are you challenging that? I am. The threats in themselves are, when they're repeated at least, an amount to torture. Living in fear, living in fear of your daughter being harmed is torture. Five minutes. And if she were to return, she would be subject to the same torture. The third step, while my sister points out it's problematic, it really isn't. A corrupt police force that can act with impunity makes that third step. It is not a flight of fancy to say that the gang members could enlist the police force, would enlist the police force. So we have... Our case law has clearly indicated that the torture must be inflicted by or at the instigation or with the consent or acquiescence of public officials or other persons acting in an official capacity. And we have this here in her testimony, which was rated as credible. She has talked about... Her testimony is that she didn't report anything. And her further testimony is that she was afraid of reporting anything. And she gave a reason for not reporting. Because bad things happen to people that report. So she did explain it. This is a woman that reasonably believes, supported by documents, that she will suffer torture if she is refoiled to El Salvador. And what documents are you pointing to? I am pointing to the country condition report, which appears at page 143 of the administrative record. I am pointing to Ms. Gomez-Zabrigo's testimony during the asylum hearing. These are things that serious minds would credit as valid. So let's assume that you get over the torture. Your brief argues that there's sufficient evidence to find official acquiescence. But unfortunately, that's not the issue for us now. We have... To rule your way, we would have to find that the evidence is so overwhelming of official acquiescence that it was an error of law to conclude otherwise. What's your best argument that that evidence is so compelling? It is compelling. The credible testimony of the petitioner before the immigration court is that the police are in cahoots and cooperated with the gang members that subjected her to torture in hopes of extracting money. So I think you're saying that anyone in El Salvador who's being subjected to threats by the gang members automatically are being subjected with the official acquiescence of the government and therefore qualify under that. It's not so much acquiescence of the entire government or the entire police department. It is that acquiescence or cooperation of a public minister or public police officer. That is the argument that the... But you haven't pointed to anyone specific or any position specific in this case who was No, we have not. So this is all just very nebulous. When we're, once again, as Judge Cayatta just said, we have to find that the evidence compels a different result. Public corruption doesn't admit itself to making a vibrant and visible record. It happens in the dark. I have one final question, at least for me, and that relates to the regulation that provides no court shall have jurisdiction to review the regulations adopted to implement this section. Do you want to respond to that? You know, we're aware of that section. Counsel, that's time. And your honor, we believe when the agency goes beyond its mandate, even crediting President Reagan with authority, they can't do that. They aren't granted deference just to make up law. Thank you. Thank you, Your Honor. Excuse me, Judge Cayatta, you're completely off screen. Thank you, Attorney Stellianos. Please mute your audio and video at this time. Attorney Leach, please unmute your audio and video. You may proceed with your argument, please. Good morning. May it please the Court, Abigail Leach for the Attorney General. Good morning. As I believe Petitioner's Counsel just conceded that they did waive their argument regarding the agency's determination that her particular social group consisting of victims of gang threats and violence to which police ignore or collaborate with due to their affiliation. I believe he did just concede that he waived that argument and that finding by the agency. Turning to Petitioner's CAT claim, again, it is Petitioner's burden to provide subjective record evidence that the public official or any other person acting in an official capacity did or would participate, acquiesce, instigate torture, and there's absolutely nothing in the record to support. And again, Petitioner's Counsel just conceded that there's nothing in the record to show that anybody did or was involved in her past threats and that anybody would acquiesce or instigate or consent to her future torture. You know, it's kind of like that Catch-22 that Judge Cayotta was talking about in the other case. If you complain and the gangs tell the police, then you're in trouble. If you... Perhaps that might occur, but again, it is Petitioner's burden to show that each step  is more than likely to occur in order to establish eligibility for CAT protection. And Petitioner's sincerely held belief that that may happen in the country conditions reports, which do reflect corruption. Again, this court has repeatedly and widely held that that is insufficient to establish eligibility for CAT protection. Accordingly, because Petitioner failed to meet that dispositive factor, she failed to establish her eligibility for protection under the CAT, and the agency's finding is supported by substantial evidence. As previously noted, the FARA regulation does explicitly strip courts of jurisdiction to consider the regulations implementing the Convention Against Torture, and it does not so this court doesn't have jurisdiction to entertain that challenge to the regulations that they are ultravirous. And finally, the Supreme Court's holding in Nice-Chavez does not have any effect or implication within this case. Nice-Chavez discussed the stop time rule in the context of cancellation of removal. Petitioner did not apply for cancellation of removal in this case. This court most recently held in U.S. v. Mendoza that the jurisdiction of immigration court is governed by agency regulations, and they do not require the time and location of a hearing to be included in a notice to appear to qualify as a charging document to confer subject matter jurisdiction over the immigration court. Additionally, the board just issued a decision at the end of September, Aaron Bula-Bravo, which also explained that notice to appear without date and time information does not strip the immigration court of jurisdiction over immigration proceedings. If there's no other questions, the government would request that the court deny the petition for review and uphold the agency's decisions in this case. Thank you, Counselor. Thank you. Thank you, Attorney Sillianos and Attorney Leach. You should disconnect from the hearing at this time, please.